S. LANE TUCKER
United States Attorney

GEORGE TRAN
Assistant United States Attorney
BORIS BOURGET
Trial Attorney, U.S. Department of Justice, Tax Division
Federal Building & United States Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: george.tran@usdoj.gov
       boris.bourget@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:23-cr-00021-SLG-KFR |
| | ) | |
| Plaintiff, | ) | COUNTS 1-6: |
| | ) | WIRE FRAUD |
| vs. | ) | Vio. of 18 U.S.C. § 1343 |
| | ) | |
| JESS GEORGE ADAMS, | ) | COUNTS 7-17: |
| | ) | WIRE FRAUD |
| Defendant. | ) | Vio. of 18 U.S.C. § 1343 |
| | ) | |
| | ) | COUNTS 18-25: |
| | ) | MONEY LAUNDERING |
| | ) | Vio. of 18 U.S.C. § 1957 |
| | ) | |
| | ) | COUNTS 26-31: |
| | ) | ATTEMPT TO EVADE AND |
| | ) | DEFEAT TAX |
| | ) | Vio. of 26 U.S.C. § 7201 |
| | ) | |
| | ) | |
| | ) | |

|                                    | ) | CRIMINAL FORFEITURE                    |
| ---------------------------------- | - | -------------------------------------- |
|                                    | ) | ALLEGATION                             |
|                                    | ) | 18 U.S.C. § 981(a)(1)(A) and (C),      |
|                                    | ) | 18 U.S.C. § 982(a)(1), 28 U.S.C.       |
|                                    | ) | § 2461(c), and Fed. R. Crim. P. 32.2(a) |
| _____  | ) |                                        |

# I N D I C T M E N T

The Grand Jury charges that:

## INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.      Defendant JESS GEORGE ADAMS ("ADAMS") was a resident of Willow, Alaska, who purported to hold an Associate Degree in Business Accounting and Management and to have over thirty years of experience in bookkeeping and administration with training in tax preparation.  Defendant ADAMS further purported to have worked as a seasonal tax return preparer for a national tax advisory company.

2.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States and collecting taxes owed to the United States.

3.      U.S. Bank, owned and operated by parent company U.S. Bancorp, was a financial institution headquartered in Minneapolis, Minnesota.  U.S. Bank had no physical branch locations in the District of Alaska.

4.    State Farm Bank was a financial institution headquartered in Bloomington, Illinois.  U.S. Bank assumed State Farm Bank's existing deposit and credit card accounts in 2020.  State Farm Bank had no physical branch locations in the District of Alaska.

5.    Matanuska Valley Federal Credit Union was a not-for-profit, member-owned cooperative financial institution with locations in the Alaska and Hawaii.

6.    Axos Bank, held by Axos Financial, Inc., was a financial institution headquartered in San Diego, California.  Axos Bank had no physical branch locations in the District of Alaska.

7.    QuickBooks was an accounting software owned and operated by Intuit, Inc., and through various licensing plans a user can access many of its products and features, including but not limited to bookkeeping, payments, sales, expenses, and other business operating tools.  Intuit, Inc. was headquartered in Mountain View, California.

8.    The Automated Clearing House ("ACH") was an electronic funds-transferring nationwide network through which depository institutions send each other batches of electronic credit and debit transfers.  The electronic funds transferring process begins with an originating depository financial institution sending batched files of ACH payments to an ACH operator.  The ACH operator then edits and sorts the payments, and thereafter delivers the payments to the receiving depository financial institution.  The ACH operator settles the payments by crediting and debiting the respective depository financial institutions settlement accounts.  ACH payments may be referred to by other names such as direct deposit, direct payment, direct debit, electronic funds transfer (EFT), and electronic check.

9.      The two national ACH operators are the United States Federal Reserve Banks and Electronic Payments Network ("EPN").  EPN is owned and operated by The Clearing House Payments Company L.L.C., a private corporation owned by multiple large commercial banks, including Bank of America, Bank of the West, Barclays, BNY Mellon, Capitol One, Citibank, Citizens Bank, Comerica, Deutche Bank, Fifth Third Bank, HSBC, Huntington, JPMorgan Chase & Co., Keybank, M&T Bank, PNC Bank, Regions, Santander, TD Bank, Truist, U.S. Bank, and Wells Fargo.

10.      Beginning on or about October 19, 2015, and continuing to on or about November 1, 2018, defendant ADAMS was employed by the City of Houston, Alaska ("EMPLOYER 1") as its Treasurer for about three years.  EMPLOYER 1 placed defendant ADAMS on administrative leave on October 19, 2018.  Defendant ADAMS resigned his position on or about November 1, 2018.  Defendant ADAMS received wages from EMPLOYER 1 during his term of employment.

11.      Between November 2019 and March 2022, defendant ADAMS was employed as a bookkeeper by an equipment company ("EMPLOYER 2") located in Wasilla, Alaska.  EMPLOYER 2 was managed and operated by an individual, R.J. Defendant ADAMS received wages from EMPLOYER 2 during his term of employment. EMPLOYER 2 terminated defendant ADAMS' employment in or about March 2022.

12.      Between October 2015 and March 2022, defendant ADAMS, while being entrusted with bookkeeping responsibilities and holding exclusive administrative access to his employers' QuickBooks, devised and executed a scheme to embezzle approximately $1.16 million from EMPLOYER 1 and EMPLOYER 2 by disguising

ACH payments as legitimate business expenses of EMPLOYER 1 and EMPLOYER 2 and instead directing these payments into his personal accounts for his personal use.

## THE SCHEME TO EMBEZZLE FROM EMPLOYER 1

13.    From on or about April 4, 2016, and continuing to on or about February 5, 2019, in the District of Alaska and elsewhere, defendant ADAMS, knowingly and with intent to defraud, devised, intended to devise, participated in, and executed a scheme to defraud EMPLOYER 1, as to material matters, and to obtain money and property from EMPLOYER 1 by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

## THE MANNER AND MEANS OF
## THE SCHEME TO EMBEZZLE FROM EMPLOYER 1

The embezzlement scheme operated, in substance, in the following manner:

14.    Defendant ADAMS, as part of his employment with EMPLOYER 1, obtained and exercised control over its payroll, books, records, and finances.

15.    Defendant ADAMS retained exclusive access to EMPLOYER 1's QuickBooks as the assigned administrative user and was the only employee with control over all aspects of EMPLOYER 1's QuickBooks.

16.    On a date unknown to the Grand Jury but no later than April 4, 2016, defendant ADAMS opened State Farm Bank checking account number ending in 0061 in

his name ("ACCOUNT 1") and thereafter used ACCOUNT 1 to receive payments that defendant ADAMS embezzled from EMPLOYER 1's business bank account.

17. Throughout his employment with EMPLOYER 1, separate and apart from ACCOUNT 1 that received the embezzled funds, defendant ADAMS received payments for his wages in his personal account at Matanuska Valley Federal Credit Union, ending in account number 5239, which he had opened in his name in or around February 2005.

18. Between April 2016 and October 2018, defendant ADAMS caused funds from EMPLOYER 1's business bank account to transfer to ACCOUNT 1 for his personal enrichment without authorization and approval of EMPLOYER 1.

19. Between April 2016 and October 2018, in furtherance of the scheme and to conceal his embezzlement activity, defendant ADAMS accessed EMPLOYER 1's QuickBooks and used QuickBooks to pay fictitious business expenses.

20. Between April 2016 and October 2018 defendant ADAMS inputted ACCOUNT 1's information as the recipient account in QuickBooks for the direct payments relating to these fictitious business expenses.

21. Between April 2016 and October 2018, defendant ADAMS, using QuickBooks, initiated direct payments for the fictitious business expenses and caused funds to be transferred from EMPLOYER 1's business bank account to ACCOUNT 1.

22. During calendar year 2016, defendant ADAMS embezzled approximately $57,500 through the above-described scheme to embezzle from EMPLOYER 1.

23. On or about January 19, 2017, defendant ADAMS, to further conceal his embezzlement activity for 2016, failed to report on his 2016 Individual Income Tax

Return approximately $57,500 of income he received from his scheme to embezzle from EMPLOYER 1.

24.     During calendar 2017, defendant ADAMS embezzled approximately $121,000 through the above-described scheme to embezzle from EMPLOYER 1.

25.     On or about January 24, 2018, defendant ADAMS, to further conceal his embezzlement activity for 2017, failed to report on his 2017 Individual Income Tax Return approximately $121,000 of income he received from his scheme to embezzle from EMPLOYER 1.

26.     During calendar 2018, defendant ADAMS embezzled approximately $95,500 through the above-described scheme to embezzle from EMPLOYER 1.

27.     On or about February 5, 2019, defendant ADAMS, to further conceal his embezzlement activity for 2018, failed to report on his 2018 Individual Income Tax Return approximately $95,500 of income he received from his scheme to embezzle from EMPLOYER 1.

28.     Defendant ADAMS further concealed his embezzlement activity by recommending to EMPLOYER 1 to not undergo an audit for years 2015, 2016, 2017, and 2018.

29.     Defendant ADAMS further concealed his embezzlement activity by withholding the password for administrative access to EMPLOYER 1's QuickBooks from other agents and employees of EMPLOYER 1 during his term of employment.

30.    Defendant ADAMS further concealed his embezzlement activity by changing the login credentials for online access to EMPLOYER 1's Matanuska Valley Federal Credit Union the same day he was placed on administrative leave.

31.    Defendant ADAMS, before his resignation date, further concealed his embezzlement activity by closing ACCOUNT 1 in or around October 2018, after he was placed on administrative leave and prior to his resignation date.

32.    Between April 2016 and October 2018, defendant ADAMS embezzled approximately $274,000 from EMPLOYER 1 and caused approximately 77 direct payments to be transmitted from EMPLOYER 1's business bank account into ACCOUNT 1 through the above-described scheme to embezzle from EMPLOYER 1.

<u>**COUNTS 1 THROUGH 6**</u>
**Wire Fraud**
**18 U.S.C. § 1343**

33.    The allegations set forth in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

34.    On or about each of the dates set forth below, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS did knowingly, and with intent to defraud, devise and intend to devise a scheme to defraud as to a material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing the scheme described above, and attempting to do so, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain

Case 3:23-cr-00021-SLG-KFR   Document 2   Filed 03/23/23   Page 8 of 24

writings, signs and signals, namely causing the following wire transfers of funds across state lines with each such use of the wires being a separate count of this Indictment:

| COUNT | DATE | DESCRIPTION OF WIRE |
|:---:|:---:|:---|
| 1 | April 4, 2018 | **$2,472.66 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 180404" |
| 2 | May 22, 2018 | **$4,201.90 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 180522" |
| 3 | June 12, 2018 | **$4,201.90 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 180612" |
| 4 | August 15, 2018 | **$4,356.08 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 180815" |
| 5 | September 19, 2018 | **$3,690.90 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 180919" |
| 6 | October 17, 2018 | **$2,718.12 ACH Payment** from the bank account of EMPLOYER 1 to ACCOUNT 1, received as "CITY OF HOUSTON QUICKBOOKS 181017" |

Each in violation of 18 U.S.C. § 1343.

THE SCHEME TO EMBEZZLE FROM EMPLOYER 2

The Grand Jury further charges:

35.     From on or about November 20, 2019, and continuing to on or about March 22, 2022, in the District of Alaska and elsewhere, defendant ADAMS, knowingly and with intent to defraud, devised, intended to devise, participated in, and executed a scheme to defraud EMPLOYER 2, as to material matters, and to obtain money and property from

EMPLOYER 2 by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

THE MANNER AND MEANS OF
THE SCHEME TO EMBEZZLE FROM EMPLOYER 2

The embezzlement scheme operated, in substance, in the following manner:

36.     On a date unknown to the Grand Jury but no later than November 5, 2019, defendant ADAMS applied for employment with EMPLOYER 2.  Defendant ADAMS, in furtherance of the scheme, submitted a resume misrepresenting his work experience as Treasurer for EMPLOYER 1 by concealing that he had embezzled funds from EMPLOYER 1, as described above, and resigned while on administrative leave as to mislead EMPLOYER 2 into hiring him.

37.     Beginning in November 2019, defendant ADAMS, in furtherance of a scheme similar to his scheme, obtained and exercised control over EMPLOYER 2's books, records, and finances, including but not limited to payroll and accounts payable and receivable, as part of his employment with EMPLOYER 2.

38.     Defendant ADAMS, in furtherance of the scheme, used QuickBooks for EMPLOYER 2's business operation.  Defendant ADAMS retained exclusive access to EMPLOYER 2's QuickBooks as the assigned administrative user and exercised control over its QuickBooks during his term of employment.

39.     On or about February 13, 2019, defendant ADAMS opened checking account number ending in 3470 with State Farm Bank ("ACCOUNT 2") in his name.

40.     Between November 2019 and October 2020, defendant ADAMS used ACCOUNT 2 to receive payments that he embezzled from EMPLOYER 2's business bank account.

41.     U.S. Bank assumed ACCOUNT 2 from State Farm Bank around October 2020, and assigned ACCOUNT 2 a new U.S. Bank account number ending in 9221 ("ACCOUNT 3").

42.     On or about December 17, 2020, defendant ADAMS opened an additional checking account ending in 0364 with Axos Bank ("ACCOUNT 4") in his name.

43.     Between October 2020 and March 2022, defendant ADAMS used both ACCOUNT 3 and ACCOUNT 4 to receive payments that he embezzled from EMPLOYER 2's business bank account.

44.     Throughout his employment with EMPLOYER 2, separate and apart from ACCOUNT 2, ACCOUNT 3, and ACCOUNT 4 that received embezzled funds, defendant ADAMS received direct deposits for his wages in his personal account at Matanuska Valley Federal Credit Union, account number ending in 5239, which he had opened in his name in or around February 2005.

45.     Between November 2019 and March 2022, defendant ADAMS caused funds from EMPLOYER 2's business bank account to transfer to ACCOUNT 2, ACCOUNT 3, and ACCOUNT 4 for his personal enrichment without authorization and approval of EMPLOYER 2.

46.     Between November 2019 and March 2022, in furtherance of the scheme and to conceal his embezzlement activity, defendant ADAMS accessed EMPLOYER 2's QuickBooks and used QuickBooks to pay fictitious business expenses.

47.     Between November 2019 and March 2022, defendant ADAMS inputted ACCOUNT 2, ACCOUNT 3, or ACCOUNT 4's information as the recipient account in QuickBooks for the direct payments relating to these fictitious business expenses.

48.     Between November 2019 and March 2022, defendant ADAMS, using QuickBooks, initiated direct payments for the fictitious business expenses and caused funds to be transferred from EMPLOYER 2's business bank account to ACCOUNT 2, ACCOUNT 3, and ACCOUNT 4.

49.     Between a date unknown to the Grand Jury but no later than December 2020 and March 2022, defendant ADAMS deleted and voided direct payments in QuickBooks that he had transferred from EMPLOYER 2's business bank account to ACCOUNT 3 and ACCOUNT 4.

50.     During calendar year 2019, defendant ADAMS embezzled approximately $17,000 through the above-described scheme to embezzle from EMPLOYER 2.

51.     On or about February 22, 2020, defendant ADAMS, to further conceal his embezzlement activity for 2019, failed to report on his 2019 Individual Income Tax Return approximately $17,000 of income he received from his scheme to embezzle from EMPLOYER 2.

52.     During calendar year 2020, defendant ADAMS embezzled approximately $310,000 through the above-described scheme to embezzle from EMPLOYER 2.

53. On or about February 21, 2021, defendant ADAMS, to further conceal his embezzlement activity for 2020, failed to report on his 2020 Individual Income Tax Return approximately $310,000 of income he received from the same scheme to embezzle from EMPLOYER 2.

54. During calendar year 2021, defendant ADAMS embezzled approximately $504,000 through the above-described scheme to embezzle from EMPLOYER 2.

55. On or about January 24, 2022, defendant ADAMS, to further conceal his embezzlement activity for 2021, failed to report on his 2021 Individual Income Tax Return approximately $504,000 of income he received from the same scheme to embezzle from EMPLOYER 2.

56. Between January and March 2022, defendant ADAMS embezzled approximately $56,000 through the above-described scheme to embezzle from EMPLOYER 2.

57. Between November 2019 and March 2022, defendant ADAMS embezzled approximately $887,500 from EMPLOYER 2 and caused approximately 158 direct payments to be transmitted from EMPLOYER 2's business bank account into ACCOUNT 2, ACCOUNT 3 and ACCOUNT 4, combined, through the above-described scheme to embezzle from EMPLOYER 2.

//

//

# COUNTS 7 THROUGH 17
## Wire Fraud
### 18 U.S.C. § 1343

58.     The allegations set forth in paragraphs 1 through 32 and 35 through 57 of this Indictment are hereby realleged and incorporated as if fully set forth herein

59.     On or about each of the dates set forth below, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS did knowingly, and with intent to defraud, devise and intend to devise a scheme to defraud as to a material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing the scheme described above, and attempting to do so, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs and signals, namely causing the following wire transfers of funds across state lines with each such use of the wires being a separate count of this Indictment:

| COUNT | DATE | DESCRIPTION OF WIRE |
|-------|------|---------------------|
| 7 | November 20, 2019 | **$1,888.72** ACH Payment from the bank account of EMPLOYER 2 to ACCOUNT 2, received as "[EMPLOYER 2] QUICKBOOKS 191120" |
| 8 | December 30, 2019 | **$4,396.51** ACH Payment from the bank account of EMPLOYER 2 to ACCOUNT 2, received as "[EMPLOYER 2] QUICKBOOKS 191230" |
| 9 | January 7, 2020 | **$3,973.74** ACH Payment from the bank account of EMPLOYER 2 to ACCOUNT 2, received as "[EMPLOYER 2] QUICKBOOKS 200107" |
| 10 | July 1, 2020 | **$7,978.91** ACH Payment from the bank account of EMPLOYER 2 to ACCOUNT 2, received as "[EMPLOYER 2] QUICKBOOKS 200701" |

| 11 | December 29, 2020 | **$5,045.75** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 4, received as "QUICKBOOKS [EMPLOYER 2] PPD 021000029809469 JESS G ADAMS." |
|---|---|---|
| 12 | January 6, 2021 | **$5,378.33** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 4, received as "QUICKBOOKS [EMPLOYER 2] PPD 021000023323889 JESS G ADAMS." |
| 13 | January 6, 2021 | **$5,678.34** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 3, received as "From [EMPLOYER 2] REF=210040219679120N00 QUICKBOOKS1722616653" |
| 14 | December 28, 2021 | **$5,622.13** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 4, received as "QUICKBOOKS [EMPLOYER 2] PPD 021000021542903 JESS G ADAMS." |
| 15 | January 5, 2022 | **$5,818.04** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 4, received as "QUICKBOOKS [EMPLOYER 2] PPD 021000027405158 JESS G ADAMS." |
| 16 | January 5, 2022 | **$5,260.23** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 3, received as "From [EMPLOYER 2] REF=213210174383870N00 QUICKBOOKS1722616653" |
| 17 | March 22, 2022 | **$5,552.96** Electronic Transfer from the bank account of EMPLOYER 2 to ACCOUNT 4, received as "QUICKBOOKS [EMPLOYER 2] PPD 021000023066063 JESS G ADAMS." |

Each in violation of 18 U.S.C. § 1343.

## COUNTS 18 THROUGH 25
### Money Laundering
### 18 U.S.C. § 1957

The Grand Jury further charges:

60.     The allegations set forth above in paragraphs 1 through 32 and 35 through 57 are hereby realleged and incorporated as if fully set forth in this count.

Case 3:23-cr-00021-SLG-KFR   Document 2   Filed 03/23/23   Page 15 of 24

61.     On or about each of the dates set forth below, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS did knowingly engage and attempted to engage in the following monetary transactions by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, such property having been derived from specified unlawful activity, that is, wire fraud:

| COUNT | DATE | MONETARY TRANSACTIONS |
|---|---|---|
| 18 | February 3, 2021 | **$11,587.91** Wire Transfer debited from ACCOUNT 4 to First National Bank Alaska |
| 19 | April 8, 2021 | **$18,243.50** Wire Transfer debited from ACCOUNT 4 to Mountain Pacific Bank |
| 20 | July 6, 2021 | **$13,495.00** Wire Transfer debited from ACCOUNT 4 to First National Bank Alaska |
| 21 | August 13, 2021 | **$10,184.00** Wire Transfer debited from ACCOUNT 4 to U.S. Bank |
| 22 | October 26, 2021 | **$15,000.00** Electronic Transfer from ACCOUNT 4 to Matanuska Valley Federal Credit Union |
| 23 | November 26, 2021 | **$22,995.00** Wire Transfer debited from ACCOUNT 4 to First National Bank Alaska |
| 24 | January 6, 2022 | **$13,600.00** Wire Transfer debited from ACCOUNT 4 to Lake Michigan Credit Union |
| 25 | May 6, 2022 | **$12,212.37** Wire Transfer debited from ACCOUNT 4 to Wells Fargo Bank |

Each in violation of 18 U.S.C. § 1957.

### COUNT 26
### Attempt to Evade and Defeat Tax (2016)
### 26 U.S.C. § 7201

The Grand Jury further charges:

62.     The allegations set forth in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

63.     From on or about January 1, 2016, and continuing through on or about January 19, 2017, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, willfully attempted to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2016, by committing the following affirmative acts:

    a.      Using and maintaining ACCOUNT 1 to keep embezzled funds from EMPLOYER 1 hidden from the IRS as income; and

    b.      On or about January 19, 2017, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS.  On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2016 was $33,442 and that the amount of tax due and owing was $4,550.  In fact, as defendant ADAMS knew, his taxable income for calendar year 2016 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

All of which is in violation of 26 U.S.C. § 7201.

//

//

## COUNT 27
## Attempt to Evade and Defeat Tax (2017)
## 26 U.S.C. § 7201

64. The allegations set forth in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

65. From on or about January 1, 2017, and continuing through on or about January 24, 2018, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, willfully attempted to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2017, by committing the following affirmative acts:

   a. Using and maintaining ACCOUNT 1 to keep embezzled funds from EMPLOYER 1 hidden from the IRS as income; and

   b. On or about January 24, 2018, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS. On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2017 was $36,709 and that the amount of tax due and owing was $5,043. In fact, as defendant ADAMS knew, his taxable income for calendar year 2017 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

   All of which is in violation of 26 U.S.C. § 7201.

//

## COUNT 28
## Attempt to Evade and Defeat Tax (2018)
## 26 U.S.C. § 7201

66.     The allegations set forth in paragraphs 1 through 32 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

67.     From on or about January 1, 2018, and continuing through on or about February 5, 2019, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, willfully attempted to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2018, by committing the following affirmative acts:

        a.      Using and maintaining ACCOUNT 1 to keep embezzled funds from EMPLOYER 1 hidden from the IRS as income; and

        b.      On or about February 5, 2019, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS.  On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2017 was $36,447 and that the amount of tax due and owing was $4,181.  In fact, as defendant ADAMS knew, his taxable income for calendar year 2018 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

        All of which is in violation of 26 U.S.C. § 7201.

## COUNT 29
## Attempt to Evade and Defeat Tax (2019)
## 26 U.S.C. § 7201

68.     The allegations set forth in paragraphs 1 through 12 and 35 through 57 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

69.     From on or about January 1, 2019, and continuing through on or about February 22, 2020, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, did willfully attempt to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2019, by committing the following affirmative acts:

        a.      Using and maintaining ACCOUNT 2 to keep embezzled funds from EMPLOYER 2 hidden from the IRS as income; and

        b.      On or about February 22, 2020, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS.  On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2019 was $13,526 and that the amount of tax due and owing was $1,429.  In fact, as defendant ADAMS knew, his taxable income for calendar year 2019 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

        All of which is in violation of 26 U.S.C. § 7201.

**Attempt to Evade and Defeat Tax (2020)**
**26 U.S.C. § 7201**

70.     The allegations set forth in paragraphs 1 through 12 and 35 through 57 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

71.     From on or about January 1, 2020, and continuing through on or about February 21, 2021, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, willfully attempted to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2020, by committing the following affirmative acts:

        a.      Using and maintaining ACCOUNT 2, ACCOUNT 3, and ACCOUNT 4 to keep embezzled funds from EMPLOYER 2 hidden from the IRS as income; and

        b.      On or about February 21, 2021, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS.  On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2020 was $7,445 and that the amount of tax due and owing was $743.  In fact, as defendant ADAMS knew, his taxable income for calendar year 2020 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

        All of which is in violation of 26 U.S.C. § 7201.

**Attempt to Evade and Defeat Tax (2021)**
**26 U.S.C. § 7201**

72.     The allegations set forth in paragraphs 1 through 12 and 35 through 57 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

73.     From on or about January 1, 2021, and continuing through on or about January 24, 2022, in the District of Alaska and elsewhere, defendant JESS GEORGE ADAMS, willfully attempted to evade and defeat income taxes due and owing by him to the United States of America for calendar year 2021, by committing the following affirmative acts:

        a.      Using and maintaining ACCOUNT 3 and ACCOUNT 4 to keep embezzled funds from EMPLOYER 2 hidden from the IRS as income; and

        b.      On or about January 24, 2022, preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the IRS.  On that tax return, defendant ADAMS reported and caused to be reported that his taxable income for 2021 was $8,876 and that the amount of tax due and owing was $888.  In fact, as defendant ADAMS knew, his taxable income for calendar year 2021 was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was additional tax due and owing to the United States of America.

All of which is in violation of 26 U.S.C. § 7201.

## CRIMINAL FORFEITURE ALLEGATION

The allegations contained in Counts 1 through 25 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a)(1), 28 U.S.C. § 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

Upon conviction of one or more of the offenses of 18 U.S.C. §§ 1343 and 1957, as set forth above in Counts 1 through 25 of this Indictment, defendant JESS GEORGE ADAMS, shall forfeit to the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a)(1), and 28 U.S.C. § 2461(c), any property, real or personal, involved in a transaction or attempted transaction in violation of Counts 18 through 25, and any property traceable to such property, and any property, real or personal, that constitutes or is derived from any proceeds traceable to violations in Counts 1 through 17, including property of any kind obtained, directly or indirectly, as a result of such violations.

If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without

        difficulty,

the United States of America shall be entitled to a money judgment or forfeiture of

substitute property pursuant to 21 U.S.C. § 853(p)

        All pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a)(1), 28 U.S.C. § 2461(c),

and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

        A TRUE BILL.


                                        s/ Grand Jury Foreperson
                                        GRAND JURY FOREPERSON



s/ George Tran
GEORGE TRAN
Assistant United States Attorney
United States of America



s/ Boris Bourget
BORIS BOURGET
Trial Attorney
United States of America



s/ E. Bryan Wilson for
S. LANE TUCKER
United States Attorney
United States of America



DATE:       3/21/23