S. LANE TUCKER
United States Attorney

THOMAS C. BRADLEY
Assistant U.S. Attorney
BORIS BOURGET
Trial Attorney, U.S. Department of Justice, Tax Division
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: thomas.bradley@usdoj.gov
Email: boris.bourget@usdoj.gov

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESS GEORGE ADAMS,<br><br>Defendant. | No. 3:23-cr-00021-SLG-KFR |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska and the U.S. Department of Justice, Tax Division; it does not bind other federal, state, or local prosecuting authorities.

## PLEA AGREEMENT

### 1. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the Indictment in this case:

- Count 1: Wire Fraud, a violation of 18 U.S.C. § 1343

- Count 7: Wire Fraud, a violation of 18 U.S.C. § 1343

- Count 23: Money Laundering, a violation of 18 U.S.C. § 1957

- Count 31: Tax Evasion, a violation of 26 U.S.C. § 7201

The United States agrees to recommend that defendant be sentenced to a term of imprisonment at the low end of the applicable sentencing guideline range and a three-year term of supervised release. The parties agree that defendant shall pay the full amount of restitution to all victims affected by any offenses charged in the Indictment. The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Indictment. Following imposition of sentence, the United States will move to dismiss the remaining counts and forfeiture allegation.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

## 2. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty pleas if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR             Page 2 of 35

### 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

#### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the Indictment:

- Count 1: Wire Fraud, a violation of 18 U.S.C. § 1343

- Count 7: Wire Fraud, a violation of 18 U.S.C. § 1343

- Count 23: Money Laundering, a violation of 18 U.S.C. § 1957

- Count 31: Tax Evasion, a violation of 26 U.S.C. § 7201

#### 3.2. Elements of the Charged Offenses

The elements of Wire Fraud charged in Counts 1 and 7, a violation of 18 U.S.C. §

1343, to which the defendant is pleading guilty are as follows:

1. The defendant knowingly participated in, devised, or intended to devise, a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money;

3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

The elements of Money Laundering charged in Count 23, a violation of 18 U.S.C.

§ 1957, to which the defendant is pleading guilty are as follows:

1. The defendant knowingly engaged or attempted to engage in a monetary transaction;

2. The defendant knew the transaction involved criminally derived property;

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 3 of 35

3. The property had a value greater than $10,000;

4. The property was, in fact, derived from Wire Fraud; and

5. The transaction occurred in the United States.

The elements of Tax Evasion charged in Count 31, a violation of 26 U.S.C. §

7201, to which the defendant is pleading guilty are as follows:

1. The defendant owed more federal income tax for the alleged calendar year at issue than was declared due on his income tax return for the calendar year;

2. The defendant knew that more federal income tax was owed than was declared due on his income tax return;

3. The defendant made an affirmative attempt to evade or defeat such additional tax; and

4. In attempting to evade or defeat such additional tax, the defendant acted willfully.

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are

as follows:

Counts 1 and 7, 18 U.S.C. § 1343

- Imprisonment for up to 20 years

- A fine of up to $250,000

- Supervised release for up to 3 years

- A $100 special assessment

Count 23, 18 U.S.C. § 1957

- Imprisonment for up to 10 years

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 4 of 35

- A fine of up to $250,000

- An alternate fine not more than twice the amount of the criminally derived property involved in the transaction.

- Supervised release for up to 3 years

- A $100 special assessment

### Counts 31, 26 U.S.C. § 7201

- Imprisonment for up to 5 years

- A fine of up to $250,000

- Cost of prosecution

- Supervised release for up to 3 years

- A $100 special assessment

## 3.4. Other Matters Affecting Sentence

### 3.4.1. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

### 3.4.2. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal

Case 3:23-cr-00021-SLG-KFR   Document 35   Filed 10/05/23   Page 5 of 35

benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. A defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, may be denied citizenship, and may not be permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including denaturalization and removal from the United States.

## 3.5. Restitution

Defendant agrees to the entry of an order of restitution and to pay restitution to the following victims:

- **City of Houston, Alaska**
- **Alaska Electric & Control, Inc. dba Jewell Equipment Rental through its owner, Robert Jewell.**
- **U.S. Treasury**

in an amount to be determined at sentencing, but not less than the amounts listed below as to each above-named victim, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3664:

- **$274,802.26** to the City of Houston, Alaska

- **$966,129.82** to Alaska Electric & Control, Inc. dba Jewell Equipment Rental

- **$309,530.30, plus applicable interest,** to the U.S. Treasury consisting of the following owed to the Internal Revenue Service:

| Tax Year | Tax Due | Interest |
|----------|---------------|------------------|
| 2016 | $13,990.00 | To Be Determined |
| 2017 | $32,162.76 | To Be Determined |
| 2018 | 21,879.53 | To Be Determined |
| 2019 | $2,058.00 | To Be Determined |
| 2020 | $85,263.83 | To Be Determined |
| 2021 | $154,176.21 | To Be Determined |

The defendant acknowledges and agrees that the above amount of agreed restitution
encompasses relevant conduct beyond the counts of conviction. Defendant further agrees
to the entry, at a minimum, of the total amount of restitution reflected in this agreement
as a result of the defendant's fraudulent conduct of all crimes charged in the Indictment.

## Restitution Agreements Specific to U.S. Treasury

The defendant acknowledges and agrees to pay interest pursuant to 26 U.S.C. §§
6601 and 6621 on the restitution amount pertaining to the U.S. Treasury; interest runs
from the last date prescribed for payment of the relevant tax liability until the IRS
receives payment in full. The government will provide an updated interest figure at
sentencing, and the defendant acknowledges that the interest remains a dynamic figure.

The defendant further agrees that restitution to the U.S. Treasury is due and
payable immediately after the judgment is entered and is subject to immediate
enforcement, in full, by the United States. If the Court imposes a schedule of payments,
the defendant agrees that the schedule of payments is a schedule of the minimum
payment due, and that the payment schedule does not prohibit or limit the methods by
which the United States may immediately enforce the judgment in full. The IRS will use
the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. §

6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from the defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liability.

The defendant also agrees to sign IRS Form 8821 "Tax Information Authorization."

The defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A Form 433-B, as appropriate), and to

disclose to the IRS any and all additional financial information and financial statements provided to the probation office.

The defendant also agrees to provide the above-described information to the probation office.

If the defendant makes a payment of the agreed-upon restitution prior to sentencing, the payment will be applied as a credit against the restitution ordered.

Defendant agrees to send all payments made pursuant to the Court's restitution ordered to the Clerk of the Court at the following address:

> Clerk of Court
> U.S. District Court, District of Alaska
> 222 W. 7th Ave., Room 229, Box/Suite #4
> Anchorage, AK 99513

With each payment to the Clerk of the Court made pursuant to the Court's restitution order, defendant will provide the following information:

1. Defendant's name and Social Security number;
2. The District Court and the docket number assigned to this case;
3. Tax year(s) or period(s) for which restitution has been ordered; and
4. A statement that the payment is being submitted pursuant to the District Court's restitution order

The defendant agrees to include a request that the Clerk of the Court send the information, along with Defendant's payments towards the restitution owed to the U.S. Treasury, to the IRS address below:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 9 of 35

Case 3:23-cr-00021-SLG-KFR   Document 35   Filed 10/05/23   Page 9 of 35

Defendant also agrees to send a notice of any payments made pursuant to this agreement, including the four categories of information noted above to the IRS at the following address:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

The defendant will file, if requested by the IRS, amended returns for the tax years 2016, 2017, 2018, 2019, 2020, and 2021, correctly reporting all income, including any unreported income; will, if requested by the IRS, provide the IRS with information regarding and relating to the years covered by the returns; will pay all additional taxes and all penalties and interest assessed by the IRS on the basis of the returns; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the IRS to be owing as a result of any computational errors.

Nothing in this agreement forecloses or limits the ability of the IRS to examine and adjust the defendant's tax returns after they are filed.

Defendant will not, after filing the tax returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

The defendant gives up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 10 of 35

The defendant agrees, if requested by the IRS, to sign any closing agreement with the IRS necessary to permit the IRS to assess and collect the total sum of **$309,530.30, plus applicable interests,** for the defendant's tax years 2016 through 2021, which comprises the tax liabilities, as well as assess and, where applicable, collect the civil fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law. The defendant again acknowledges and agrees that the amount of agreed restitution encompasses relevant conduct beyond the counts of conviction.

## 4. Factual Basis

The defendant admits the truth of the allegations in the Indictment and of the following statement:

### Summary

The defendant, Jess George Adams, was a resident of Willow, Alaska. The defendant held an Associate Degree from the University of Alaska in Business Accounting and Management and had over thirty years of experience in bookkeeping and administration with specialized training in tax preparation. Between 2015 and 2022, the defendant was employed in roles entrusted with bookkeeping and administrative responsibilities for two entities: (1) City of Houston, Alaska and (2) Alaska Electric & Control, Inc. dba Jewell Equipment Rental and its Owner Robert Jewell. In his positions, the defendant had the credential levels to access his employers' QuickBooks as the administrator, and in turn he controlled all aspects of QuickBooks entries, including access to his employers' bank accounts, making payment to vendors, and editing

privileges to change vendor information. The defendant intended to defraud and cheat each employer by executing a scheme using his authorized credentials in QuickBooks to obtain money where he submitted and processed materially false and fraudulent vendor payments for fictitious expenses and routed the money to his personal bank accounts.

The defendant cheated and deceived both employers out of a total amount of at least $1,162,706.85 through the processing and transmission of at least 235 wire transfers between 2016 and 2022, as follows:

| Year | Total Funds Embezzled | Receiving Account | # of Wires | Employer | Total by Year |
|------|------------------------|-------------------|------------|----------|---------------|
| 2016 | $57,637.08 | SFB 0061 | 14 | Houston | $57,637.08 |
| 2017 | $121,233.89 | SFB 0061 | 33 | Houston | $121,233.89 |
| 2018 | $95,932.29 | SFB 0061 | 30 | Houston | $95,932.29 |
| **Total Amount Embezzled from City of Houston** | | | | | **$274,803.26** |
| 2019 | $17,137.48 | SFB 3470 | 6 | AE/Jewell | $17,137.48 |
| 2020 | $226,503.13 | SFB 3470 | 40 | AE/Jewell | |
| 2020 | $71,945.92 | USB 9221 | 11 | AE/Jewell | $310,303.48 |
| 2020 | $11,854.43 | Axos 0364 | 2 | AE/Jewell | |
| 2021 | $214,362.81 | USB 9221 | 38 | AE/Jewell | $504,038.18 |
| 2021 | $289,675.37 | Axos 0364 | 51 | AE/Jewell | |
| 2022 | $21,988.81 | USB 9221 | 4 | AE/Jewell | $56,424.45 |
| 2022 | $34,435.64 | Axos 0364 | 6 | AE/Jewell | |
| **Total Amount Embezzled from Jewell Equipment Rental** | | | | | **$887,903.59** |
| **Total** | **$1,162,706.85** | | **235** | | |

Following the defendant's scheme to embezzle funds and having committed wire fraud, between February 2021 and May 2022, the defendant engaged in money laundering, making at least eight transactions over $10,000 that used criminally derived money obtained by wire fraud.

The defendant also failed to report his earnings of the embezzled funds as taxable

income on his tax returns for calendar years 2016 through 2021, and thereby evaded the assessment of taxes, resulting additional taxes due and owing totaling, plus penalties and interest, for those years.

Embezzlement Scheme Against City of Houston

The defendant began his employment with the City of Houston, Alaska, as its Treasurer on October 19, 2015. He remained there until about October 19, 2018, when the City of Houston placed him on administrative leave. The defendant then resigned from his position on November 1, 2019. During his employment with the City of Houston, the defendant earned a salary. Throughout his employment, the defendant intended to and did deceive and cheat the City of Houston of public funds for his personal enrichment by engaging in a scheme to embezzle said funds through false representations and pretenses using his position of trust and access to its QuickBooks.

At the start of his employment in October 2015, the defendant signed an oath of office swearing that he would "honestly, faithfully, and impartially discharge" his duties "as Treasurer." The defendant's role as treasurer included being in charge and responsible for all the city's funds, keep accurate and honest accounting, inform the City Council of the financial condition of the city, authorize spending for legitimate expenses, process accounts payable, administer payroll, and keep a complete account of money received and spent by the City of Houston. The defendant, however, did not have the authority to authorize or make personal payments to himself beyond his wages and approved reimbursements. Throughout his employment, the defendant exercised control

over the City of Houston's payroll, books, records, and finances.

On April 4, 2016, the defendant opened a State Farm Bank checking account ending in 0061 that he intended to use to deposit embezzled funds as part of the scheme. The defendant had a separate account ending in 5239 with the Matanuska Valley Federal Credit Union that he had used to receive his wages, which had been opened since February 2005. The defendant closed State Farm Bank checking account ending in 0061 in 2018 after going on administrative leave.

Beginning in April 2016 and continuing until October 2018, the defendant, using his credentials, accessed the City of Houston's QuickBooks to make payments for fictitious expenses; in doing so, the defendant disguised the transactions by inputting his State Farm Bank checking account ending in 0061 as the recipient account for each unauthorized transaction and then directed the payments to be processed, causing funds to transfer from the City of Houston's bank account to the defendant's personal account ending in 0061. The defendant made these false entries into QuickBooks for fictitious expenses and then caused the transfer of City of Houston's funds to his personal account without authorization from the City of Houston.

The defendant knowingly made a total of 78 fraudulent interstate wire transactions between April 2016 and October 2018 in furtherance of the above-described scheme to embezzle funds from the City of Houston, which totaled $274,803.26 in actual losses. The defendant knowingly caused and used these 78 interstate wire communications to carry out the most essential part of the scheme, that is, to personally receive the

Case 3:23-cr-00021-SLG-KFR   Document 35   Filed 10/05/23   Page 14 of 35

embezzled funds. The defendant was personally enriched by each transaction. The

following transactions, as charged in the Indictment, were six of the 78 interstate wire

communications knowingly made by the defendant during his employment with the City

of Houston in furtherance of his scheme:

| DATE | DESCRIPTION OF WIRE |
|------|---------------------|
| April 4, 2018 | **$2,472.66 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 180404" |
| May 22, 2018 | **$4,201.90 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 180522" |
| June 12, 2018 | **$4,201.90 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 180612" |
| August 15, 2018 | **$4,356.08 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 180815" |
| September 19, 2018 | **$3,690.90 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 180919" |
| October 17, 2018 | **$2,718.12 ACH Payment** from the bank account belonging the City of Houston to the defendant's State Farm Bank account ending in 0061, received as "CITY OF HOUSTON QUICKBOOKS 181017" |

Embezzlement Scheme Against Jewell Equipment Rental Company

The defendant began his employment as a bookkeeper with Alaska Electric &

Control, Inc. dba Jewell Equipment Rental, which was owned by Robert Jewell

(collectively hereinafter "Jewell Equipment"), in November 2019. When the defendant

U.S. v. Jess George Adams
3:23-cr-00021-SLG-KFR          Page 15 of 35

applied for this position, he submitted a resume and concealed the material fact that he had embezzled funds from his previous employer, the City of Houston, and further concealed that he was placed on administrative leave and that he resigned while on administrative leave. Throughout his employment, the defendant intended to and did deceive and cheat Jewell Equipment out of funds for his personal enrichment by engaging in a scheme to embezzle said funds through false representations and pretenses using his position of trust and access to Jewell Equipment's QuickBooks

The defendant's role as Jewell Equipment's bookkeeper included administering payroll, tracking accounts payable and receivable, maintaining the company's QuickBooks, and managing its inventory system through a program named Clover. The defendant was the only employee with administrative access in QuickBooks, which meant he had the highest credentials in accessing its QuickBooks. Defendant therefore exercised control over Jewell Equipment's payroll, books, records, and finances during his employment there.

Prior to starting his employment with Jewell Equipment, and after having closed his other account ending in 0061 with State Farm Bank, on February 13, 2019, the defendant opened checking account ending in 3470 with State Farm Bank. Sometime in October 2020 this account transitioned to U.S. Bank checking account ending in 9221 when U.S. Bank then assumed his prior account from State Farm Bank. On December 17, 2020, the defendant opened an additional checking account ending in 0364 with Axos Bank. Between November 2019 and October 2020, the defendant intended and did use

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 16 of 35

all his personal bank accounts ending in 3470, in 9221, and in 0364 to receive funds that he embezzled from Jewell Equipment's business bank account, as part of his scheme.

During his employment with Jewell Equipment, the defendant did earn a salary. The defendant received his wages into his personal bank account ending in 5239 at Matanuska Valley Federal Credit Union, which he had opened since February 2005.

Beginning in November 2019 and continuing until at least March 2022, the defendant, using his credentials, accessed the Jewell Equipment's QuickBooks to make payments for fictitious business expenses; in doing so, the defendant disguised the transactions by inputting his State Farm Bank checking account ending in 3470, U.S. Bank checking account ending in 9221, or Axos Bank checking account ending in 0364 as the recipient account for each unauthorized transaction, and then directed the payments to be processed causing funds to transfer from the Jewell Equipment's bank account to the defendant's personal accounts ending in 3470, in 9221, and in 0364. The defendant made these false entries into QuickBooks for fictitious expenses and then caused the transfer of Jewell Equipment's funds to his personal accounts by processing them without authorization from Jewell Equipment.

Starting in December 2020, Adams began deleting unauthorized transactions after he directed payments for the fictitious expenses to his personal account. This effort concealed his theft and embezzlement of the funds from Jewell Equipment.

The defendant knowingly made a total of 159 fraudulent interstate wire transactions between November 2019 and March 2022 in furtherance of the above-

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 17 of 35

described scheme to embezzle funds from Jewell Equipment, which totaled $887,903.59 in actual losses. The defendant knowingly caused and used these 159 interstate wire communications to carry out the most essential part of the scheme, that is, to personally receive the embezzled funds. The defendant was personally enriched by each transaction. The following transactions, as charged in the Indictment, were eleven of the 159 interstate wire communications knowingly made by the defendant during his employment with Jewell Equipment in furtherance of his scheme:

| DATE | DESCRIPTION OF WIRE |
|---|---|
| November 20, 2019 | **$1,888.72** ACH Payment from the bank account belonging to Jewell Equipment to the defendant's State Farm Bank account ending 3470, received as "ALASKA ELECTRIC QUICKBOOKS 191120" |
| December 30, 2019 | **$4,396.51** ACH Payment from the bank account of Jewell Equipment to the defendant's State Farm Bank account ending 3470, received as "ALASKA ELECTRIC QUICKBOOKS 191230" |
| January 7, 2020 | **$3,973.74** ACH Payment from the bank account of Jewell Equipment to the defendant's State Farm Bank account ending 3470, received as "ALASKA ELECTRIC QUICKBOOKS 200107" |
| July 1, 2020 | **$7,978.91** ACH Payment from the bank account of Jewell Equipment to the defendant's State Farm Bank account ending 3470, received as "ALASKA ELECTRIC QUICKBOOKS 200701" |
| December 29, 2020 | **$5,045.75** Electronic Transfer from the bank account of Jewell Equipment to the defendant's Axos Bank account ending 0364, received as "QUICKBOOKS ALASKA ELECTRIC PPD 021000029809469 JESS G ADAMS." |
| January 6, 2021 | **$5,378.33** Electronic Transfer from the bank account of Jewell Equipment to the defendant's Axos Bank account ending 0364, received as "QUICKBOOKS ALASKA ELECTRIC PPD 021000023323889 JESS G ADAMS." |
| January 6, 2021 | **$5,678.34** Electronic Transfer from the bank account of Jewell Equipment to the defendant's U.S. Bank account ending 9221, |

| | received as "From ALASKA ELECTRIC REF=210040219679120N00 QUICKBOOKS1722616653" |
|---|---|
| December 28, 2021 | **$5,622.13** Electronic Transfer from the bank account of Jewell Equipment to the defendant's Axos Bank account ending 0364, received as "QUICKBOOKS ALASKA ELECTRIC PPD 021000021542903 JESS G ADAMS." |
| January 5, 2022 | **$5,818.04** Electronic Transfer from the bank account of Jewell Equipment to the defendant's Axos Bank account ending 0364, received as "QUICKBOOKS ALASKA ELECTRIC PPD 021000027405158 JESS G ADAMS." |
| January 5, 2022 | **$5,260.23** Electronic Transfer from the bank account of Jewell Equipment to the defendant's U.S. Bank account ending 9221, received as "From ALASKA ELECTRIC REF=213210174383870N00 QUICKBOOKS1722616653" |
| March 22, 2022 | **$5,552.96** Electronic Transfer from the bank account of Jewell Equipment to the defendant's Axos Bank account ending 0364, received as "QUICKBOOKS ALASKA ELECTRIC PPD 021000023066063 JESS G ADAMS." |

In addition and in furtherance of the scheme to embezzle, the defendant used his access to QuickBooks to refund customer sales, and effectively reduced gross sales covering up the gross sales funds in the amount of approximately $600,000.00 that he had already removed from the company through his other means.

In addition and in furtherance of the scheme to embezzle, the defendant paid his personal bills in the amount of $12,847.20 using Jewell Equipment's funds without authorization. The defendant made these payments to AT&T, DISH Network, and Netflix, among others.

In addition and in furtherance of the scheme to embezzle, the defendant also paid himself a second paycheck throughout various pay periods during his employment at Jewell Equipment, totaling $50,000. To do this, the defendant paid himself his salary during the normal payroll period from Jewell Equipment, and then ran a separate payroll

using the Alaska Electric company books.

In addition and in furtherance of the scheme to embezzle, the defendant deleted cash sales and kept the cash. In February 2022, Jewell Equipment had accounted for $15,379.03 in cash sales in its Clover system. The cash deposits for that month, however, was only $1,904.28. The amount of cash from cash sales that the defendant took totaled $13,474.75 for February 2022.

## Disposition of Funds from All Schemes

In furtherance of the scheme to embezzle, throughout 2020 and 2023, the defendant disposed of the funds and personally enriched from it, in addition to spending the unlawfully obtained funds to support his lifestyle, including:

- Purchased at least 8 cars;
- Purchased firearms;
- Spent about $55,000 on Amazon purchases;
- Spent about $60,000 at Northern Legacy Auto; and
- Took over $90,000 in cash withdrawals.

## Money Laundering of $22,995

The defendant, following the receipt of embezzled money through the interstate wire communications to his Axos Bank checking account ending in 0364 involved in the above-described scheme, knowingly engaged in several monetary transactions in criminally derived money greater than $10,000 for the purpose of acquiring cars.

Between November 1, 2021, and November 23, 2021, the defendant knowingly

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 20 of 35

transmitted the following four interstate wire communications into his Axos Bank
account ending 0364:

| Date | Amount of Wire Transfer |
|------------|-------------------------|
| 11/02/2021 | $5,621.47 |
| 11/09/2021 | $5,349.22 |
| 11/16/2021 | $5,534.91 |
| 11/23/2021 | $5,596.11 |

in furtherance of the embezzlement scheme against Jewell Equipment and amounting to
criminal violations of wire fraud. The account balance on November 1, 2021, was
approximately $74,519.08, the whole of which were funds derived from previous wire
frauds and as part of the scheme to embezzle from Jewell Equipment. The above four
wire transfers accounted for the deposit of an additional $21,101.71 in funds derived
from further wire frauds and as part of the scheme to embezzle from Jewell Equipment.

Then, on November 24, 2021, the defendant entered into an agreement to purchase
a 2013 Ford F150 truck from Frontier Auto Sales, LLC for a total of $22,995.00. The
defendant made a wire transfer of $22,995.00 from his Axos Bank account ending in
0364 on November 26, 2021. The $22,995,00 was money the defendant had embezzled
from Jewell Equipment though wire fraud. In making the request for the wire, the
defendant informed Axos Bank that the purpose of the wire was for the purchase of a
2013 Ford F150 and provided its VIN number. On the same day, Frontier Auto Sales,
LLC received a payment from the defendant in the full amount of $22,995.00 for the
purchase of the truck.

The defendant also knowingly engaged in seven other transactions of money

Case 3:23-cr-00021-SLG-KFR   Document 35   Filed 10/05/23   Page 21 of 35

laundering using criminally derived funds from his Axos Bank account ending in 0364.

## Tax Evasion

The defendant filed U.S. Individual Income Tax Return, Form 1040 ("tax return"), for each calendar year between 2016 and 2021. The defendant reported income as part of these filed tax returns for each year. But rather than providing the Internal Revenue Service (IRS) with accurate information about his income, the defendant knowingly evaded his tax obligations by significantly underreporting his true income. As a result, the defendant willfully evaded the assessment and payment of approximately $309,530.30 in taxes for calendar years 2016 through 2021.

The defendant evaded the assessment and payment of taxes for calendar years 2016 through 2021 by willfully preparing, signing, and submitting false and fraudulent tax returns to the IRS that underreported his taxable income in each year:

- On January 19, 2017, the defendant willfully submitted his 2016 tax return online to the IRS knowing that he had falsified his taxable income at Line 43 as $33,442.00 when he then and there knew that his actual taxable income was $91,079.08 for 2016. The defendant knowingly underreported his income in the amount of approximately $57,637.08.

- On January 24, 2018, the defendant willfully submitted his 2017 tax return online to the IRS knowing that he had falsified his taxable income at Line 43 as $36,709.00 when he then and there knew that his actual taxable income was $157,942.89 for 2017. The defendant knowingly

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 22 of 35

underreported his income in the amount of approximately $121,233.89.

- On February 5, 2019, the defendant willfully submitted his 2018 tax return online to the IRS knowing that he had falsified his taxable income at Line 10 as $36,447.00 when he then and there knew that his actual taxable income was $132,379.29 for 2018. The defendant knowingly underreported his income in the amount of approximately $95,932.29.

- On February 22, 2020, the defendant willfully submitted his 2019 tax return online to the IRS knowing that he had falsified his taxable income at Line 11b as $13,526.00 when he then and there knew that his actual taxable income was $30,663.48 for 2019. The defendant knowingly underreported his income in the amount of approximately $17,137.48.

- On February 21, 2021, the defendant willfully submitted his 2020 tax return online to the IRS knowing that he had falsified his taxable income at Line 15 as $7,445.00 when he then and there knew that his actual taxable income was $317,748.08 for 2020. The defendant knowingly underreported his income in the amount of approximately $310,303.48.

- On January 24, 2022, the defendant willfully submitted his 2021 tax return online to the IRS knowing that he had falsified his taxable income at Line 15 as $8,876.00 when he then and there knew that his actual taxable income was $512,914.18 for 2021. The defendant knowingly underreported his income in the amount of approximately $504,038.18.

In summary, the following is the defendant's falsified, reported taxable income compared to the actual income that he knowingly underreported:

| Tax Year | Reported Taxable Income | Actual Taxable Income | Unreported Income |
|---|---|---|---|
| 2016 | Line 43 $33,442.00 | $91,079.08 | $57,637.08 |
| 2017 | Line 43 $36,709.00 | $157,942.89 | $121,233.89 |
| 2018 | Line 10 $36,447.00 | $132,379.29 | $95,932.29 |
| 2019 | Line 11b $13,526.00 | $30,663.48 | $17,137.48 |
| 2020 | Line 15 $7,445.00 | $317,748.08 | $310,303.48 |
| 2021 | Line 15 $8,876.00 | $512,914.18 | $504,038.18 |
| TOTALS | | $1,242,727.00 | $1,106,282.40 |

By omitting taxable income on his tax returns for 2016 through 2021, the defendant avoided assessment and payment of taxes. The defendant had an additional tax due and owing for the 2016 through 2021 as follows:

| Tax Year | Additional Tax Due and Owing |
|---|---|
| 2016 | $13,990.00 |
| 2017 | $32,162.76 |
| 2018 | $21,879.53 |
| 2019 | $2,058.00 |
| 2020 | $85,263.83 |
| 2021 | $154,176.21 |
| | Total: $309,530.30 |

The parties agree that the Court may rely upon this statement to determine whether there is a factual basis to support the guilty plea, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the

proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States

Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when

considering the sentence to impose. The Guidelines do not establish the statutory

maximum or minimum sentence applicable to the offenses to which the defendant is

pleading guilty. The Guidelines are not mandatory and the Court is not bound to impose a

sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

#### 5.2.1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in

U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to

recommend the defendant for a two-level downward adjustment for acceptance of

responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level

adjustment for acceptance of responsibility. If, at any time prior to imposition of the

sentence, the United States concludes that the defendant has failed to fully satisfy the

criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance

of responsibility—including by inappropriately seeking to delay sentencing—the United

States will not make or, if already made will withdraw, this recommendation and motion.

### 5.2.2. Loss Amount, U.S.S.G. 2B1.1(b)(1)

The Parties agree that the loss is greater than $550,000, and that pursuant to U.S.S.C. § 2B1.1(b)(1)(H), the increase in base offense level is an additional fourteen levels.

### 5.2.3. Abuse of Position of Trust and Use of Special Skill, U.S.S.G. 3B1.3

The Parties agree that the defendant has abused a position of public and private trust, and used a special skill, in a manner that significantly facilitated the commission and concealment of the offenses for a two-level increase.

### 5.3. Sentencing Recommendations

The United States Probation Office will prepare the defendant's presentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the Guidelines calculation in the presentence report, and to present evidence in support of their respective sentencing arguments.

The United States agrees to recommend that defendant be sentenced to a term of imprisonment at the low end of the applicable sentencing guideline range and a three-year term of supervised release.

Except as set forth in this agreement, the parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on any relevant criteria, including the stipulated facts set forth in Section 4, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory Sentencing Guidelines and the sentencing factors set forth in

18 U.S.C. § 3553.

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 26 of 35

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle him to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement.

## 6. Additional Agreements by the United States

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth above.

However, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By entering into this agreement, the defendant intentionally and voluntarily waives the following trial rights:

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 27 of 35

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed pursuant to this agreement, except on the grounds that the sentence exceeds the

maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, the length of any term of imprisonment; forfeiture; length, terms, or conditions of probation or supervised release; any fines; restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement.

### 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed pursuant to plea agreement, or any portion thereof, including the length of any term of imprisonment; forfeiture; length, terms, or conditions of probation or supervised release; any fines; restitution; and any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; or a challenge to the voluntariness of the defendant's guilty plea. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or § 2255. The filing of such a challenge shall constitute a material breach of this agreement.

Case 3:23-cr-00021-SLG-KFR   Document 35   Filed 10/05/23   Page 29 of 35

### 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in signing this agreement shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis. This provision applies regardless of whether the Court accepts this plea agreement.

### 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections, if any, to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Agreement to be Sentenced Within 120 days of Entering a Plea

The defendant agrees to be sentenced within 120 days of appearing before the Court to enter a guilty plea. The defendant acknowledges that if he seeks to delay

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 30 of 35

sentencing past that time without the prior consent of the United States, this conduct will be considered inconsistent with acceptance of responsibility and will forfeit any entitlement to a Guidelines reduction for acceptance of responsibility. The United States acknowledges that a delay beyond 120 in sentencing attributable to the Court, the government, or other factors beyond the defendant's control will not be considered inconsistent with acceptance of responsibility.

### 7.7. Release Pending Sentencing

As an express term of this plea agreement, the defendant agrees to abide by all release conditions that may be imposed and acknowledges that his failure to comply with any such condition may result in his detention pending sentencing, and that such failure will constitute a material breach of this agreement, and will entitle the government, at its option, to make a sentencing recommendation different from that set forth above, or to rescission of this agreement altogether.

### 7.8. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that he/she has failed in material way to perform any obligation set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

*U.S. v. Jess George Adams*

## 8. The Parties' Acceptance of this Agreement

I, JESS GEORGE ADAMS, the defendant in this case, affirm this document contains all of the agreements made between me, with the assistance of my attorney, and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

I enter into this agreement voluntarily, with the intent to be bound, and with a full understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and

agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the Indictment/Information. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of:

- Count 1: Wire Fraud, a violation of 18 U.S.C. § 1343;
- Count 7: Wire Fraud, a violation of 18 U.S.C. § 1343;
- Count 23: Money Laundering, a violation of 18 U.S.C. § 1957; and
- Count 31: Tax Evasion, a violation of 26 U.S.C. § 7201

as charged in the Indictment in their entirety.

DATED: 10/3/2023

JESS GEORGE ADAMS,
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 10/3/23

Burke Wonnell
Attorney for Jess George Adams

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR          Page 34 of 35

On behalf of the United States, the undersigned attorneys accept the defendant's offer to plead guilty under the terms of this plea agreement.

S. LANE TUCKER
United States Attorney

DATED: 10/4/2023

THOMAS C. BRADLEY
Assistant United States Attorney United States of America

BORIS BOURGET
Trial Attorney
U.S. Department of Justice, Tax Division
United States of America

*U.S. v. Jess George Adams*
3:23-cr-00021-SLG-KFR        Page 35 of 35