S. LANE TUCKER
United States Attorney

THOMAS C. BRADLEY
Assistant U.S. Attorney
BORIS BOURGET
Trial Attorney, U.S. Department of Justice, Tax Division
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Thomas.bradley@usdoj.gov
       Boris.bourget@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  vs.<br><br>JESS GEORGE ADAMS,<br><br>       Defendant. | No. 3:23-CR-00021-001-SLG |

**SENTENCING MEMORANDUM**

      The United States recommends imposition of the following sentence:

**INCARCERATION**.................................................................................**30 MONTHS**
**SUPERVISED RELEASE**.....................................................................**36 MONTHS**
**SPECIAL ASSESSMENT**..................................................................................**$400**
**RESTITUTION** ..............................................................................**$1,550,462.38**
**FINE**.........................................................................................................................**NONE**

**FACTS**

Between 2015 and 2022, Jess George Adams embezzled over $1.16 million from two separate employers—first as Treasurer for the City of Houston, Alaska, between October 2015 and November 2018; then as a bookkeeper for Alaska Electric dba Jewell Equipment Company in Wasilla between November 2019 and April 2022. His scheme included gaining access to the employers' QuickBooks, retaining exclusive control of said QuickBooks, and directing payments for fictitious expenses that were ultimately diverted to his personal checking account. He had a separate account for deposits of his W-2 wages. His scheme was consistent across both employers. Adams directed over 235 fraudulent wires. From 2021 through 2022, having embezzled money into a specific account and committing wire fraud, Adams further laundered the money by transmitting more than $10,000 from this account to purchase cars. Adams evaded $319,894 in individual income taxes by not reporting the $1.1 million of other income for tax years 2016, 2017, 2018, 2019, 2020, and 2021.

**GUIDELINES CALCULATION**

Defendant objects to paragraph 21 on page 8 of the Final Presentence Investigation Report at Docket 50. Specifically, Defendant objects to the assessment of a +4-level enhancement for being "in the business of laundering funds." As Application Note 4(A) to USSG 2S1.1 indicates, "[t]he court shall consider the totality of circumstances to determine whether a defendant who did not commit the underlying offense was in the business of laundering funds, for purposes of subsection (b)(2)(C)". In this case, all of the money laundering relates to Defendant's underlying offense conduct. He therefore was

not engaged in the business of laundering funds, and the four-level enhancement does not apply.

This argument appears to be correct. The enhancement is clearly aimed at professional money launderers who handle funds for other criminals, such as drug traffickers.

The United States Probation and Pretrial Services Office otherwise properly calculated the application of the United States Sentencing Guidelines. The Total Offense Level is 19, Criminal History Category I. The advisory sentencing range is 30-37 months of imprisonment.

## STATUTORY CRITERIA AND RECOMMENDED SENTENCE

### 1. Nature and circumstances of the offense

This was a complex scheme, carried out over a six-year period against two victims. When fired from one employer, Defendant switched to another and continued the same behavior. He executed at least 235 wire transfers between 2016 and 2022 for a total amount of at least $1,162,706.85. Those wire transfers are as follows:

//

//

//

//

//

//

//

| Year | Total Funds Embezzled | Receiving Account | # of Wires | Employer | Total by Year |
|---|---|---|---|---|---|
| 2016 | $57,637.08 | SFB 0061 | 14 | Houston | $57,637.08 |
| 2017 | $121,233.89 | SFB 0061 | 33 | Houston | $121,233.89 |
| 2018 | $95,932.29 | SFB 0061 | 30 | Houston | $95,932.29 |
| **Total Amount Embezzled from City of Houston** | | | | | **$274,803.26** |
| 2019 | $17,137.48 | SFB 3470 | 6 | AE/Jewell | $17,137.48 |
| 2020 | $226,503.13 | SFB 3470 | 40 | AE/Jewell | $310,303.48 |
| 2020 | $71,945.92 | USB 9221 | 11 | AE/Jewell | |
| 2020 | $11,854.43 | Axos 0364 | 2 | AE/Jewell | |
| 2021 | $214,362.81 | USB 9221 | 38 | AE/Jewell | $504,038.18 |
| 2021 | $289,675.37 | Axos 0364 | 51 | AE/Jewell | |
| 2022 | $21,988.81 | USB 9221 | 4 | AE/Jewell | $56,424.45 |
| 2022 | $34,435.64 | Axos 0364 | 6 | AE/Jewell | |
| **Total Amount Embezzled from Jewell Equipment Rental** | | | | | **$887,903.59** |
| **Total** | **$1,162,706.85** | | **235** | | |

Defendant also underreported his income on his tax returns by $1.1 million, omitting the embezzled funds, creating a tax due and owing of $309,530.30:

| Tax Year | Tax Due |
|---|---|
| 2016 | $13,990.00 |
| 2017 | $32,162.76 |
| 2018 | 21,879.53 |
| 2019 | $2,058.00 |
| 2020 | $85,263.83 |
| 2021 | $154,176.21 |

**2. History and characteristics of the defendant**

Defendant evidently has health issues, supported by extensive medical records shared by his attorney. These do not seem serious enough to warrant a reduction or justify a sentence without imprisonment.

//

//

Defendant has no criminal history, has a college education, and worked as a skilled accountant and bookkeeper, handling millions of dollars. He has no identified drug or alcohol problem, gambling addiction, or other evident cause of the thefts in this case. While being poor or addicted to drugs is not an *excuse* for criminality, it is at least an *explanation* or a *reason*. There is no explanation here, other than greed.

As Judge Posner eloquently wrote in *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) (remanding fraud and tax evasion case for resentencing):

> [W]e take this opportunity to emphasize to the district judges of this circuit that no "middle class" sentencing discounts are authorized. Business criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity. *Cf.* U.S.S.G. § 5H1.10. It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight our nature. Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

**3. The seriousness of the offense and just punishment**

Unlike many prosecutions that come before the Court, there are "real" victims in this case. Not the United States, or the public, or some big bank or credit card company, but a small business and a small city government. The City of Houston's budget took a hit

*U.S. v. ADAMS*
3:23-CR-00021-001-SLG Page 5 of 9
Case 3:23-cr-00021-SLG-KFR   Document 57   Filed 07/03/24   Page 5 of 9

of nearly $300,000, which was thereafter assigned as a loss to their insurance. Jewell Equipment's loss was nearly $900,000. Bookkeepers and treasurers are core and integral members of any public or private business, and the breach of that trust is significant itself aside from loss value. Further, beyond just monetary loss, these victims had to go through internal protocol changes and suffer collateral effects of the breach of trust for the entities and their reputation.

Adams was interviewed and initially lied to agents. Adams demonstrated compulsive behavior in the use of the fraudulent gains by spending it quickly and somewhat frivolously (on cars and consumer goods via Amazon) without regard for the harms he inflicted on the victims.

**4. Adequate deterrence**

Deterrence is difficult to assess in any case, but in white collar cases it seems more achievable than in drug, gun, or other "street crime" prosecutions. Tax prosecutions are particularly effective deterrents, as the tax laws affect nearly everyone. A member of the community who hears about a drug dealer, gang member, or bank robber being convicted and sentenced is not impacted by the sentence, as they would likely never consider committing such crimes. Tax crimes, however, are possible whenever a citizen signs and files (or doesn't file) their Form 1040 on April 15. As the United States Sentencing Commission takes pains to point out:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the

limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

United States Sentencing Guidelines, Part T.1, Introductory Commentary.

## 5. Protection of the public from further crimes

Defendant stole from one employer, was caught, fired, and continued the scheme with his next employer. There is no reason to believe that he will not steal again if employed in any position of trust.

## 6. Avoidance of unwarranted disparities

It is difficult to find sufficiently similar fraud or tax cases to compare Adams with, given disparities in loss, criminal history, complexity and duration of the scheme, abuse of trust, education of defendant, etc.

Recent comparable criminal tax sentencings nationwide include:

### *United States v. John L. Petrone*, No. 24-CR-44 (W.D. TX)

On June 26, 2024, John Petrone was sentenced to 37 months in prison, three years of supervised release and to pay $529,551 in restitution to the United States after pleading guilty to tax evasion. Petrone did not file individual income tax returns for 2014 through 2019, nor did he pay income taxes for those years, despite earning hundreds of thousands of dollars from his business. Petrone caused a tax loss to the IRS of over $529,000.

//

*U.S. v. ADAMS*
3:23-CR-00021-001-SLG        Page 7 of 9
Case 3:23-cr-00021-SLG-KFR   Document 57   Filed 07/03/24   Page 7 of 9

### *United States v. John Borgela*, No. 24-CR-45 (M.D. FL)

On June 17, 2024, John Borgela was sentenced to 30 months' imprisonment, to be followed by 2 years of supervised release, and ordered to pay $970,976 in restitution. On February 27, 2024, pleaded guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. From 2017 through 2020, Borgela operated a tax return preparation business in Orlando, Florida. Borgela prepared false returns for clients that included false itemized deductions and inflated federal income tax withholdings.

### *United States v. Ryan Richmond*, No. 21-CR-20209 (E.D. MI)

On June 5, 2024, Ryan Richmond was sentenced to 24 months in prison, to be followed by one year of supervised release, and was ordered to pay $2,777,684 in restitution to the IRS for evading his income taxes, failing to file an income tax return, and obstructing an IRS audit.

### *United States v. James Jones*, No. 20-CR-46 (W.D. VA)

On May 8, 2024, James Jones was sentenced to 78 months in prison and was ordered to pay a $250,000 fine and $394,508 in restitution following his conviction for evading the payment of employment taxes, filing false tax returns, and obstructing the IRS.

**7. Sentencing recommendation**

30 months of imprisonment.

36 months of supervised release

$274,803.26 in restitution to City of Houston.

$887,903.59 in restitution to National Union Fire Insurance Company of Pittsburgh (on behalf of Jewell Equipment.)

$309,530.30 plus interest to the United States Treasury.

$400 special assessment.

## CONCLUSION

Pursuant to the plea agreement, the United States recommends a term of 30 months followed by the maximum term of supervision, three years. No file is requested, as any funds should go to restitution to the victims, including the IRS. Credit should be given for any payments made so far, as indicated by the defense.

RESPECTFULLY SUBMITTED July 3, 2024 at Anchorage, Alaska.

        S. LANE TUCKER
        United States Attorney

        /s THOMAS C. BRADLEY
        THOMAS C. BRADLEY
        Assistant United States Attorney
        United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s THOMAS C. BRADLEY

*U.S. v. ADAMS*
3:23-CR-00021-001-SLG     Page 9 of 9
Case 3:23-cr-00021-SLG-KFR   Document 57   Filed 07/03/24   Page 9 of 9